[No. 34318-1-I. Division One. April 24, 1995.]

MADELINE MOREHOUSE, *Appellant,* v. GOODNIGHT BROTHERS CONSTRUCTION, ET AL, *Respondents.*

*Donald Kronenberg,* for appellant.

*Patrick Madden, David Goodnight,* and *Bogle & Gates* for respondents Goodnight Construction, Inc., et al. *Diane Libby* and *Stafford Frey Cooper* for respondents Goodnight Brothers Construction, et al.

BAKER, J. — Madeline Morehouse appeals from a CR 12(b)(6) dismissal of her action against Goodnight Brothers Construction and Goodnight Construction, Inc. Morehouse

contends the trial court erred in determining that she had failed to state a claim upon which relief could be granted. Respondents Goodnight Construction, Inc., ask this court to sanction Morehouse's counsel for bringing a frivolous appeal. We decline to impose sanctions, but we affirm the dismissal order because no facts consistent with the complaint would support a determination that Respondents owed a legal duty to Morehouse.

## I

Morehouse was attacked in her home by Alan Chesnutt (the "Edmonds rapist"). Chesnutt had committed multiple rapes in the vicinity. He was finally apprehended by Morehouse in her residence. Morehouse suffered physical and psychological harm during the encounter. Chesnutt used a ladder from a nearby construction site to enter Morehouse's home through a second story window. Respondents were alleged to be contractors on the construction site and/or owners of the ladder.

Morehouse brought this action for personal injury alleging Respondents had negligently created a special temptation or opportunity for Chesnutt's criminal activity. The trial court granted Respondents' motion to dismiss for failure to state a claim upon which relief could be granted.

■ A motion to dismiss under CR 12(b)(6) should be granted only when no set of facts, consistent with the complaint, would entitle the plaintiff to relief. *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995). For purposes of this appeal the following facts must be accepted as true: (1) Morehouse's home is directly across the street from the construction site, and (2) Respondents owned the ladder which was left unsecured and conspicuously visible from outside the construction site.

■ The elements of an action for negligence are: (1) a duty owed to the plaintiff, (2) breach of that duty, (3) resulting injury, and (4) proximate cause between the breach and the injury. *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991) (citing *Christen v. Lee*, 113 Wn.2d

479, 488, 780 P.2d 1307 (1989)). The dispositive issue here is whether any set of facts would support a duty owed to Morehouse by Respondents. The existence of a duty presents a question of law. *Hutchins*, 116 Wn.2d at 220 (citing *Pedroza v. Bryant*, 101 Wn.2d 226, 677 P.2d 166 (1984)).

▇ As a general rule, private persons have no duty to protect others from third person criminal activity. *Hutchins*, 116 Wn.2d at 223.[1] Morehouse contends Respondents owed her a duty to avoid creating a special temptation or opportunity for Chesnutt's criminal activity. *Hutchins v. 1001 Fourth Ave. Assocs., supra*, recognized that such a duty may exist under certain circumstances.

In *Hutchins* a pedestrian was pushed into and then mugged inside the armored car bay of a downtown Seattle office building. He sued the building owner for personal injuries, alleging that the bay was poorly lit, and the owner knew or should have known it was in a high crime area and that the bay created a place of concealment where muggers could lie in wait. The trial court determined that the owner had no duty to a passerby "to maintain its building in a manner that did not create an unreasonable risk of criminal assault." *Hutchins*, 116 Wn.2d at 220. Affirming, the Supreme Court considered and rejected the argument that the owner had created a special risk of criminal activity. *Hutchins*, 116 Wn.2d at 233.

> [W]here the third party conduct is intentional in nature, [a]n act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

*Hutchins*, 116 Wn.2d at 230 (quoting Restatement (Second) of Torts § 302B (1965)). The construction and maintenance of the bay did not, as a matter of law, create the sort of special temptation or opportunity for criminal activity which would give rise to such a duty. *Hutchins*, 116 Wn.2d at 233.

---

[1] The most common exceptions to this rule are found where the defendant has a "special relationship" with either the third party or the foreseeable victim. *See Hutchins*, 116 Wn.2d at 227-29. Respondents contend no special relationship exists in this case. Morehouse does not argue otherwise.

Only a handful of other cases discuss this specific type of duty. In *Lauritzen v. Lauritzen*, 74 Wn. App. 432, 874 P.2d 861, *review denied*, 125 Wn.2d 1006 (1994) a woman sued her husband for injuries sustained in an attack in the parking lot of a Miami convenience store. The husband had become lost and drove into a dangerous part of town against the better judgment of his wife. *Lauritzen*, 74 Wn. App. at 434-35. The court held that the husband had not created a special temptation for criminal activity by leaving his vehicle where he did. *Lauritzen*, 74 Wn. App. at 443.

In *Henry v. Merck & Co.*, 877 F.2d 1489 (10th Cir. 1989) a worker stole a cupful of concentrated sulfuric acid from a laboratory where she worked, took it to the plaintiff's home and deliberately threw it on the plaintiff's face. The trial court denied the laboratory's motion for a directed verdict. *Henry*, 877 F.2d at 1491. Reversing, the reviewing court rejected an argument under § 302B that the storage of sulfuric acid created a special risk that it would be used as a weapon. *Henry*, 877 F.2d at 1494.

Morehouse analogizes the present facts to *Russo v. Grace Inst.*, 145 Misc. 2d 242, 546 N.Y.S.2d 509, *aff'd*, 153 A.D.2d 820 (1989), cited in *Hutchins*. In *Russo* a tenant was attacked in his apartment by robbers who gained access to the apartment's terrace by climbing a scaffolding. The defendant erected the scaffolding on an adjacent property close to the terrace. The court rejected defendant's contention that it had no duty to prevent criminal use of the scaffolding. *Russo*, at 247. In finding a duty, the *Russo* court made a casual comparison between the scaffolding and an unsecured ladder — a comparison upon which Morehouse heavily relies.

> If a workman had negligently left an unsecured ladder on the construction site, which an intruder used to climb to an adjacent apartment, why should there be no liability? And scaffolding is as accessible to climbers as is a ladder, an open invitation to the nimble thief. We should be prepared to acknowledge that he who invites strangers to ravage his neighbor's land is not without guilt.

*Russo*, at 246-47.

We reject *Russo's* comparison of a ladder to a scaffolding. While the ladder in the present case was used to enter an

apartment directly across the street from where it was stolen, it could have been moved farther and used elsewhere. The portability of the ladder substantially increases the universe of persons to whom a duty could extend. Contrary to the *Russo* court's analysis, a scaffolding is *more* accessible to a "nimble thief" than an unsecured ladder. The scaffolding does not need to be moved, set up, or stolen in the first place and creates a special security risk to the building against which it is erected.

A portable ladder is simply too common to be considered a special temptation for criminal acts against any particular persons or property.

> [I]t is not enough to say with the benefit of hindsight that a high degree of risk of crime was created because [the] defendants' property in fact [was used to commit the crime]. Instead, cases where this exception to the general rule (of no liability for the criminal acts of third parties) is applied involve some condition of the property which, by its nature, is quite out of the ordinary, *i.e.*, presenting a *special* or *peculiar* temptation or opportunity, and involve a *high* degree of risk of harm.

*Hutchins*, 116 Wn.2d at 232. The ladder did not create a special risk of criminal activity because Chesnutt could have brought his own ladder, stolen a different ladder, or used any of numerous other instrumentalities to gain access.[2]

 Morehouse also relies on the allegation, which must be accepted as true for purposes of this review, that it was widely known that the Edmonds rapist was active in the area. "[Crime] is an unfortunate fact of urban life." *Hutchins*, 116 Wn.2d at 233. In *Lauritzen*, 74 Wn. App. at 443, it was not enough that the husband drove into a convenience store in a particularly bad section of an unusually dangerous city at night. Furthermore,

> there is a basis to conclude that the high incidence of crime in an urban area does not favor imposition of the duty urged by plaintiffs, but instead cuts the other way. That is, if the premises are located in an area where criminal assaults often occur, imposition of a duty could result in the departure of businesses from the urban core areas — an undesirable result.

---

[2]Apparently, Chesnutt first tried to enter Morehouse's apartment by standing on a trash container. The owners of the trash container would not have been liable if he had been successful.

*Hutchins*, 116 Wn.2d at 236. While consideration must be given to the physical and temporal context of the alleged acts or omissions of the defendant, it is the nature of the defendant's conduct or the condition of his or her property which determines whether an extraordinary risk of criminal activity has been created. Ownership of property in an unfortunately dangerous part of town or period in history does not convert a common risk into a special opportunity for crime. A common ladder left unsecured on one's own property does not become a special temptation for crime simply because a serial rapist is active in the area.

We hold that no set of facts, consistent with Morehouse's complaint, would give rise to a legal duty owed by Respondents.[3]

## II

■ Respondents Goodnight Construction, Inc., request sanctions against Morehouse's counsel for pursuing a frivolous appeal. Respondents assert that they neither owned nor controlled the ladder in question. Respondents did not appeal the trial court's refusal to consider whether Morehouse sued the wrong defendants. This court will not award sanctions on that basis. Morehouse's legal position was both warranted by a good faith argument for a change in existing law and supported by authority. Respondents' request for sanctions is denied.

Affirmed.

PEKELIS, C.J., and AGID, J., concur.

───────────

[3]Our resolution of the issue of duty makes it unnecessary to consider whether the other elements of a negligence action are sufficiently alleged. However, while the parties have separately discussed foreseeability, legal causation and superseding cause, we doubt whether any of these doctrines could provide a legal basis for dismissal of Morehouse's cause of action, independent of the dispositive issue of duty. If a duty to avoid creation of a special risk of criminal activity were found, it would be incongruous to hold that the resulting criminal activity was not foreseeable, not a legal proximate cause, or a superseding cause.