[No. 57495-7-I. Division One. May 7, 2007.]

ELEA D. PARRILLA ET AL., *Appellants*, v. KING COUNTY ET AL., *Respondents*.

428

*Courvoisier L. Carpenter*, pro se.

*Diego P. Gavilanes*; and *Philip A. Talmadge* and *Emmelyn Hart-Biberfeld* (of *Talmadge Law Group, PLLC*), for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Jill H. Hendrix* and *Kristofer J. Bundy, Deputies*, for respondents.

¶1 DWYER, J. — An actor owes another a duty to guard against the foreseeable criminal conduct of a third party where the actor's affirmative act has exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable person would have taken into account.[1] In this case, Elea and Roy Parrilla allege that a King County bus driver parked the bus he was driving on the side of Martin Luther King Jr. Way (MLK) in Seattle and exited the bus, leaving the engine running and a visibly erratic passenger alone on board. The passenger drove the bus down MLK and collided with several vehicles, including that of the Parrillas. Under these circumstances, King County owed a duty of care to the Parrillas because the bus driver's affirmative act exposed the Parrillas to a recognizable high degree of risk of harm through the passenger's criminal conduct, which a reasonable person would have foreseen. Thus, the trial court erred by ruling that, as a matter of law, King County did not owe a duty of care to the Parrillas and by dismissing the Parrillas' action on that basis. Accordingly we reverse and remand this case to the trial court for further proceedings.

## FACTS

¶2 The facts alleged by the Parrillas in their complaint against King County are as follows.

¶3 On August 28, 2002, an altercation erupted between two passengers on a King County Metro bus as it was traveling on MLK in Seattle. In an attempt to quell the altercation, the driver of the bus pulled over to the curb and ordered all of the passengers to disembark. All but three of

---

[1] RESTATEMENT (SECOND) OF TORTS § 302 B cmt. e (1965).

the passengers, Courvoisier Carpenter and the two individuals involved in the altercation, complied with the driver's order. The driver then exited the bus, leaving the engine running with Carpenter and the two other passengers on board.

¶4 The two individuals involved in the altercation eventually left the bus. The driver then re-entered the bus, approached Carpenter, and again ordered him to disembark. Carpenter began exhibiting bizarre behavior, including acting as if he were talking to somebody outside of the vehicle although nobody was there, yelling unintelligibly, and striking the windows of the bus with his fists. After observing Carpenter's behavior for several minutes, the driver exited the bus a second time, again leaving the engine running with Carpenter on board.

¶5 Carpenter then moved into the driver's seat of the idling 14-ton bus and drove it down MLK before crashing into several vehicles, including that of the Parrillas. The Parrillas suffered injuries as the result of this collision. During these events, Carpenter was heavily under the influence of phencyclidine (PCP) and carboxy-THC (tetrahydrocannabinol), illegal recreational drugs.

¶6 The Parrillas sued King County in negligence for damages sustained as a result of the collision. The trial court dismissed the Parrillas' action on King County's CR 12(c) motion, concluding, as a matter of law, that King County did not owe a duty of care to the Parrillas.

¶7 This appeal followed.

## DISCUSSION

¶8 We review a CR 12(c) dismissal ruling de novo, examining the pleadings to determine whether the claimant can prove any set of facts, consistent with the complaint, that would entitle the claimant to relief. *N. Coast Enters., Inc. v. Factoria P'ship*, 94 Wn. App. 855, 858-59, 974 P.2d 1257 (1999). The factual allegations contained in

the complaint are accepted as true. *N. Coast*, 94 Wn. App. at 859.[2]

¶9 To establish an actionable negligence claim, a plaintiff must establish the existence of (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause between the breach and the injury. *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). Accordingly, the existence of a duty owed by the defendant to the plaintiff is an essential element of an actionable negligence claim. *Tae Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 194-95, 15 P.3d 1283 (2001). The existence of a duty is a question of law for the court, *Folsom v. Burger King*, 135 Wn.2d 658, 671, 958 P.2d 301 (1998), to be determined by reference to considerations of public policy. *Bernethy v. Walt Failor's, Inc.*, 97 Wn.2d 929, 933, 653 P.2d 280 (1982). Questions of law are reviewed de novo. *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 698, 952 P.2d 590 (1998).

¶10 Here, the Parrillas advance three arguments in support of their contention that King County owed them a duty of care. First, the Parillas assert that King County owed a duty to them because its driver's actions exposed them to a recognizable high degree of risk of harm from Carpenter's conduct, which a reasonable person would have

---

[2] As a preliminary matter, the Parrillas contend that this court should review the motion here at issue as a motion for summary judgment, rather than a motion for judgment on the pleadings, asserting that a manual for King County bus drivers was presented to the trial court for its consideration. Pursuant to CR 12(c), "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." However, when documents submitted to the trial court are not material to the question at hand, the submission of such documents is not sufficient to convert a motion for judgment on the pleadings to a motion for summary judgment. *Cary v. Mason County*, 132 Wn. App. 495, 498-99, 132 P.3d 157 (2006); *N. Coast*, 94 Wn. App. at 858.

Here, the trial court's order articulates that it decided the motion pursuant to CR 12(c), presumably determining that the contents of the manual were not material to its determination. The Parrillas do not assign error to the trial court's decision to decide the motion pursuant to this rule. Accordingly, we review this matter as a CR 12(c) motion on the pleadings, considering the recitals of the pleadings in conducting our review.

taken into account. Second, the Parrillas contend that King County's driver negligently entrusted the bus to Carpenter, thereby giving rise to a duty to guard against Carpenter's conduct. Third, the Parrillas contend that King County's "common carrier" status gave rise to a duty to control Carpenter's conduct in relation to the Parrillas.

¶11 We agree that, pursuant to the facts alleged by the Parrillas, King County owed them a duty to guard against Carpenter's criminal conduct because the driver's actions exposed the Parrillas to a recognizable high degree of risk of harm through that misconduct, which a reasonable person would have taken into account.

## I. *Affirmative Act Exposing the Parrillas to a Recognizable High Degree of Risk of Harm*

¶12 The Parrillas first contend that King County owed them a duty of care because the bus driver should have known that his affirmative act of exiting the bus while the engine was running, leaving the visibly erratic Carpenter alone on board, exposed the Parrillas to a recognizable high degree of risk of harm from misconduct by Carpenter, which a reasonable person would have taken into account. Assuming the truth of the facts alleged by the Parrillas in their complaint, we agree.

¶13 Our determination that a duty of care exists under the circumstances here alleged is compelled by *Restatement (Second) of Torts* § 302 B (1965), and our Supreme Court's interpretation thereof. *See Kim*, 143 Wn.2d at 196-98. Section 302 B provides:

> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

An official comment to that section elaborates:

> There are . . . situations in which the actor, as a reasonable man, is required to anticipate and guard against the inten-

tional, or even criminal, misconduct of others. In general, these situations arise where the actor is under a special responsibility toward the one who suffers the harm, which includes the duty to protect him against such intentional misconduct; *or where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account.*

RESTATEMENT (SECOND) OF TORTS § 302 B cmt. e (emphasis added).

¶14 The illustrations provided in section 302 B comment e offer additional guidance. Pursuant to two of these illustrations, a duty of care may arise "[w]here the actor acts with knowledge of peculiar conditions which create a high degree of risk of intentional misconduct,"[3] or "[w]here property of which the actor has possession or control affords a peculiar temptation or opportunity for intentional interference likely to cause harm."[4] Each of these statements has obvious applicability to the case at hand.

¶15 Furthermore, an additional official comment to section 302 B explains that the existence or nonexistence of a duty pursuant to that section must be determined by reference to the particular circumstances at issue:

> It is not possible to state definite rules as to when the actor is required to take precautions against intentional or criminal misconduct. As in other cases of negligence, it is a matter of balancing the magnitude of the risk against the utility of the actor's conduct. *Factors to be considered are the known character, past conduct, and tendencies of the person whose intentional conduct causes the harm, the temptation or opportunity which the situation may afford him for such misconduct, the gravity of the harm which may result,* and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the actor would be required to take.

---

[3] RESTATEMENT (SECOND) OF TORTS § 302 B cmt. e, subsec. H.

[4] RESTATEMENT (SECOND) OF TORTS § 302 B cmt. e, subsec. G.

RESTATEMENT (SECOND) OF TORTS § 302 B cmt. f (emphasis added).

¶16 Our Supreme Court discussed section 302 B in *Kim*, 143 Wn.2d at 196-98. While *Kim* held that the provision did not support the imposition of a duty of care under the particular circumstances of that case, the court acknowledged that the duty of care may exist under other circumstances:

> As comment e to the section explains, a duty to guard against third party conduct may exist where there is a special relationship to the one suffering the harm, or "where the actor's own affirmative act has created or exposed the other to a *recognizable high degree of risk of harm* through such misconduct, which a reasonable [person] would take into account." RESTATEMENT (SECOND) OF TORTS § 302B cmt. e (1965) (emphasis added). This does not mean that any risk of harm gives rise to a duty. Instead, an unusual risk of harm, a "high degree risk of harm," is required. *Id.*

*Kim*, 143 Wn.2d at 196 (alteration in original). Accordingly, pursuant to section 302 B and *Kim*'s adoption of the rule described therein, a duty to guard against a third party's criminal conduct may exist where an actor's affirmative act has exposed another to a recognizable high degree risk of harm through such misconduct, which a reasonable person would take into account.

¶17 King County nonetheless contends that a duty of care may not arise under such circumstances, asserting that the imposition of such a duty conflicts both with prior Washington case law and with the intent of section 302 B itself.

¶18 King County initially argues that the only circumstances that may give rise to a duty to guard against the criminal conduct of a third party, pursuant to Washington case law, are those in which the actor has a "special relationship" with either the criminal third party or with the party exposed to that criminal conduct. This is not the law.

¶19 As a general rule, "every actor whose conduct involves an unreasonable risk of harm to another 'is under a duty to exercise reasonable care to prevent the risk from taking effect.'" *Minahan v. W. Wash. Fair Ass'n*, 117 Wn. App. 881, 897, 73 P.3d 1019 (2003) (quoting RESTATEMENT (SECOND) OF TORTS § 321 (1965)). A risk is "unreasonable" pursuant to that principle only if a reasonable person would have foreseen it. *Minahan*, 117 Wn. App. at 897. Accordingly, the existence of a duty turns on the foreseeability of the risk created. *Higgins v. Intex Recreation Corp.*, 123 Wn. App. 821, 837, 99 P.3d 421 (2004) (quoting *Rasmussen v. Bendotti*, 107 Wn. App. 947, 956, 29 P.3d 56 (2001)). If a risk is foreseeable, an individual generally has a duty to exercise reasonable care to prevent it. *Minahan*, 117 Wn. App. at 897. If a risk is not foreseeable, an actor generally has no duty to prevent it. *Rikstad v. Holmberg*, 76 Wn.2d 265, 456 P.2d 355 (1969); *Higgins*, 123 Wn. App. at 837 (quoting *Rasmussen*, 107 Wn. App. at 956).

¶20 It is true that an actor ordinarily owes no duty to protect an injured party from harm caused by the criminal acts of third parties; *see, e.g.*, *Morehouse v. Goodnight Bros. Constr.*, 77 Wn. App. 568, 571, 892 P.2d 1112 (1995); *Kim*, 143 Wn.2d at 194-95; *see also Tortes v. King County*, 119 Wn. App. 1, 7, 84 P.3d 252 (2003) ("[A] person is normally allowed to proceed on the basis that others will obey the law."). The rationale for this rule is that criminal conduct is usually not reasonably foreseeable. *Bernethy*, 97 Wn.2d at 934; RESTATEMENT (SECOND) OF TORTS § 302 B cmt. d.[5]

¶21 Accordingly, Washington cases finding the existence of a duty to guard against the criminal conduct of a third party have generally been based on reasons other than the

---

[5] As section 302 B cmt. d explains:

Normally the actor has much less reason to anticipate intentional misconduct than he has to anticipate negligence. In the ordinary case he may reasonably proceed upon the assumption that others will not interfere in a manner intended to cause harm to anyone. This is true particularly where the intentional conduct is a crime, since *under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law*.

RESTATEMENT (SECOND) OF TORTS § 302 B cmt. d (emphasis added).

foreseeability of such conduct. As the court in *Kim* explained, such cases have, instead, justified the imposition of such a duty based on the existence of a "special relationship" between either the actor and the victim, or between the actor and the criminal third party. *Kim*, 143 Wn.2d at 196-97; *see, e.g., Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 943 P.2d 286 (1997) (business owed duty to invitee to protect against criminal conduct of third party); *Hertog v. City of Seattle*, 138 Wn.2d 265, 979 P.2d 400 (1999) (state owed duty to individual harmed by the criminal conduct of probationer under state's supervision).

¶22 However, criminal conduct is not unforeseeable as a matter of law. *Bernethy*, 97 Wn.2d at 934. Thus, in keeping with the general rule that an individual has a duty to avoid reasonably foreseeable risks, if a third party's criminal conduct is reasonably foreseeable, an actor may have a duty to avoid actions that expose another to that misconduct. *Bernethy*, 97 Wn.2d at 934 (citing *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 321, 255 P.2d 360 (1953)). As our Supreme Court explained:

> Whether or not an intervening act is criminal in nature, is a fact to be considered in determining whether such act was reasonably foreseeable. But intervening criminal acts may be found to be foreseeable, and if so found, actionable negligence may be predicated thereon.

*McLeod*, 42 Wn.2d at 321. The rule articulated by section 302 B and adopted by the court in *Kim* is consistent with that principle. It allows the imposition of a duty only when the risk of harm is recognizable, and only when a reasonable person would have taken the risk into account.

¶23 Thus, King County's contention that a duty to guard against the criminal conduct of a third party may arise only when there exists a special relationship between either the actor and the criminal third party, or between the actor and the victim of that criminal conduct, fails.

¶24 King County next asserts, referencing *Restatement (Second) of Torts* section 302 comment a, that section 302 B

was not intended to give rise to a duty of care, but only to explain when an already-existing duty has been breached. That comment provides:

> This Section is concerned only with the negligent character of the actor's conduct, and not with his duty to avoid the unreasonable risk. In general, anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act. The duties of one who merely omits to act are more restricted, and in general are confined to situations where there is a special relation between the actor and the other which gives rise to the duty. . . . If the actor is under no duty to the other to act, his failure to do so may be negligent conduct within the rule stated in this Section, but it does not subject him to liability, because of the absence of duty.

RESTATEMENT (SECOND) OF TORTS § 302 cmt. a.[6] However, the quoted comment cautions only that the section does not describe a rule giving rise to a duty on the part of an individual whose *failure* to act exposes another to harm. In regard to the duties of one who undertakes an *affirmative act*, the comment merely restates the general rule that actors are "under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act." RESTATEMENT (SECOND) OF TORTS § 302 cmt. a. The interpretation of section 302 B advanced by the Parrillas, that a duty of care may arise pursuant to that section where an actor's affirmative act has created or exposed another to a recognizable high degree risk of harm, is entirely consistent with that general principle.

¶25 In the present case, it is an affirmative act, rather than a failure to act, that is at issue. The bus driver affirmatively acted by leaving Carpenter alone on board the bus with its engine running. Section 302 comment a does not purport to foreclose the imposition of a duty of care in such a situation. Moreover, regardless of whether a particu-

---

[6] Section 302 B is a special subsection of section 302. The comments pertaining to section 302 thus apply to section 302 B.

lar intent is evidenced by section 302 comment a, our Supreme Court acknowledged in *Kim* that section 302 B may support a finding that a duty of care exists under such circumstances. *Kim*, 143 Wn.2d at 196-98.

¶26 Thus, pursuant to section 302 B and *Kim*, we hold that a duty to guard against a third party's foreseeable criminal conduct exists where an actor's own affirmative act has created or exposed another to a recognizable high degree of risk of harm through such misconduct, which a reasonable person would have taken into account.

¶27 We must next determine whether the bus driver's affirmative act in this case gave rise to a duty of care pursuant to that rule. Our Supreme Court's analysis in *Kim* again guides our inquiry. The court concluded in *Kim* that such a duty was not present under the particular circumstances of that case. *Kim*, 143 Wn.2d at 197. In that case, a thief stole a minivan owned by a rental car company, which was parked in the company's administrative parking lot with the keys in the ignition. As the court in *Kim* reasoned, there were no special circumstances that rendered the criminal act or harm suffered in that case reasonably foreseeable, both because no vehicle had ever been stolen from the company's administrative facility lot before the theft occurred and because there was nothing out of the ordinary about the vehicle that was stolen or its location that created a peculiar temptation or opportunity for interference. *Kim*, 143 Wn.2d at 198. In addition, the minivan was not the type of vehicle uniquely capable of inflicting serious damage. *Kim*, 143 Wn.2d at 200.[7]

---

[7] Many other jurisdictions have confronted the issue of whether a duty of care may be found to exist in situations such as that at issue in *Kim*, where a defendant left keys in a vehicle which was later stolen and used to cause harm. Several courts have denied liability, finding either that the vehicle owner did not owe a duty of care to the victim or that the theft broke the chain of causation between the owner's negligence and the injuries suffered. *See Cruz v. Middlekauff Lincoln-Mercury, Inc.*, 909 P.2d 1252, 1254 (Utah 1996) (listing cases); William H. Danne, Jr., Annotation, *Liability of Motorist Who Left Key in Ignition for Damage or Injury Caused by Stranger Operating the Vehicle*, 45 A.L.R.3d 787 (1972).

Several other courts, however, have found that a duty of care exists in such situations, frequently basing their decisions on the presence of unique circum-

¶28 In contrast to the situation in *Kim*, Carpenter's criminal act, and the harm occasioned to the Parrillas thereby, may be found to have been foreseeable under the circumstances alleged by the Parrillas. Moreover, pursuant to those alleged circumstances, the driver's affirmative act exposed the Parrillas to a recognizable high degree of risk of harm from Carpenter's criminal conduct, which a reasonable person would have taken into account.

¶29 Unlike the situation in *Kim*, the driver here acted with knowledge of peculiar conditions which created a high degree of risk of intentional misconduct. In *Kim*, the defendant merely left an empty vehicle, keys in the ignition, in a private parking lot. Here, the bus driver left the bus with the engine running next to the curb of a public street, with Carpenter on board. Significantly, the bus driver was fully aware that Carpenter was acting in a highly volatile manner. Indeed, Carpenter had displayed a tendency toward criminal conduct by refusing the driver's requests that he leave the bus and by hitting the windows of the bus with his fists. Furthermore, unlike the ordinary minivan stolen in *Kim*, the 14-ton bus here was a vehicle uniquely capable of inflicting severe damage. The risk of harm arising from the criminal operation of such a vehicle was recognizably high. Moreover, the bus was stolen by Carpenter mere moments after it was left unattended, not at a remote future time by an unknown individual, as was the case in *Kim*. A jury could well find that Carpenter's actions were reasonably foreseeable under these circumstances.

¶30 In sum, pursuant to the facts alleged by the Parrillas, an instrumentality uniquely capable of causing severe

---

stances, absent from the facts at issue in *Kim*, which rendered the criminal conduct or harm suffered particularly foreseeable. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Grain Belt Breweries, Inc.*, 309 Minn. 376, 245 N.W.2d 186 (1976) (vehicle stolen was a beer truck that was left in an area that had a high level of alcohol consumption); *Hergenrether v. East*, 61 Cal. 2d 440, 445, 393 P.2d 164, 39 Cal. Rptr. 4 (1964) (The vehicle stolen, a 2-ton truck capable of inflicting more serious injury than an ordinary vehicle, was left in a neighborhood "heavily populated by drunks and near drunks."); *see also Cruz*, 909 P.2d at 1255-56 (listing cases where unique circumstances rendered harm foreseeable and justified imposing duty).

injuries was left idling and unguarded within easy reach of a severely impaired individual. The bus driver was aware of these circumstances. Assuming the truth of these averments, the bus driver's affirmative act created a high degree risk of harm through Carpenter's misconduct, which a reasonable person would have taken into account.

¶31 Thus, pursuant to the circumstances alleged, King County owed a duty of care to the Parrillas. The trial court erred by holding otherwise.

II. *Negligent Entrustment*

¶32 The Parrillas next contend that King County negligently entrusted the bus to Carpenter, thereby giving rise to a duty of care to the Parrillas. We disagree.

¶33 A party in control of a vehicle or other instrumentality may be held liable for damages resulting from the use of that instrumentality when it is supplied or entrusted to someone who is intoxicated or otherwise incompetent. *Hulse v. Driver*, 11 Wn. App. 509, 524 P.2d 255 (1974); RESTATEMENT (SECOND) OF TORTS § 390 (1965). However, pursuant to the plain meaning of the word, "entrustment" requires some kind of agreement or consent, either express or implied, to relinquish control of the instrumentality in question. BLACK'S LAW DICTIONARY 574 (8th ed. 2004) ("entrust" defined as: "To *give* (a person) the responsibility for something, usu[ally] after establishing a confidential relationship" (emphasis added)). Moreover, each Washington case that has imposed of a duty of care based on a theory of negligent entrustment has involved a situation where there existed such consent to relinquish control. *See, e.g., Mitchell v. Churches*, 119 Wash. 547, 206 P. 6 (1922) (vehicle loaned to intoxicated person); *Cameron v. Downs*, 32 Wn. App. 875, 650 P.2d 260 (1982) (keys to vehicle loaned to incompetent driver). Accordingly, such consent is a necessary element of a negligent entrustment claim.

¶34 The Parrillas' citation to our Supreme Court's opinion in *Bernethy* does not convince us otherwise. *Bernethy*, 97 Wn.2d at 933-34. In that case, the court held that the

owner of a firearms store may be found liable for negligently entrusting a gun to a visibly intoxicated patron, even though the intoxicated patron stole the gun by walking out of the store with the firearm before the sales transaction had been completed. In so holding, however, the court in *Bernethy* specifically relied on facts indicating that the owner intended to relinquish control of the gun to the intoxicated patron. Specifically, before the patron left the store with the gun, the owner of the store had agreed to sell the gun to the patron, had placed the gun and ammunition on the counter in front of him, and was in possession of the patron's credit card for the purpose of processing the sales transaction. *Bernethy*, 97 Wn.2d at 934. Thus, the store owner had agreed to relinquish control of the instrumentality in question.

¶35 Here, the facts asserted by the Parrillas give no indication that the bus driver affirmatively agreed to relinquish control of the bus to Carpenter. Thus, the Parrillas' contention that the driver negligently entrusted the bus to Carpenter is unavailing. The trial court's ruling on this issue was correct.

III. *Common Carrier Status*

¶36 The Parrillas next contend that King County owed a duty to the Parrillas by virtue of King County's "common carrier" status. Again, we disagree.

¶37 It is true that a common carrier of passengers owes the highest degree of care to protect its passengers from harm. *Price v. Kitsap Transit*, 125 Wn.2d 456, 465, 886 P.2d 556 (1994); RESTATEMENT (SECOND) OF TORTS § 314 A(1) (1965). However, that duty is one owed to the passengers themselves, not a duty owed to third parties. *See Zorotovich v. Wash. Toll Bridge Auth.*, 80 Wn.2d 106, 108-09, 491 P.2d 1295 (1971). It is also true that those who "take charge" of an individual may have a duty to control that individual's actions in relation to third parties. *Bishop v. Miche*, 137 Wn.2d 518, 524, 973 P.2d 465 (1999); RESTATEMENT (SECOND) OF TORTS § 319 (1965). However, for such a duty to arise,

there must be a "definite, established, and continuing relationship between the defendant and the third party," *Honcoop v. State*, 111 Wn.2d 182, 193, 759 P.2d 1188 (1988), such as that existing between a parole officer and a parolee or between a psychiatrist and a patient. *See Joyce v. Dep't of Corr.*, 155 Wn.2d 306, 317, 119 P.3d 825 (2005) (parole officer/parolee); *Petersen v. State*, 100 Wn.2d 421, 425-29, 671 P.2d 230 (1983) (psychiatrist/patient). There is no such relationship between a common carrier and its passengers.

¶38 Thus, the Parrillas' contention that King County owed them a duty of care by virtue of its common carrier status is unavailing. The trial court's ruling on this issue was correct.

¶39 Reversed and remanded for proceedings consistent with this opinion.

APPELWICK, C.J., and BECKER, J., concur.