[No. 38718.    En Banc.    October 13, 1967.]

LAWRENCE MYRON DICKERSON, *Respondent*, v. ST. PETER'S HOSPITAL, *Appellant*.*

*O'Leary, Meyer & O'Leary*, by *Ernest L. Meyer*, for appellant.

*Reported in 432 P.2d 293.

*Miracle, Treadwell & Pruzan,* for respondent.

ROSELLINI, J.—This is a suit instituted by a patient against his doctor and St. Peter Hospital for damages he alleges he suffered as the result of the loss of a device called a catheter which was being used to administer blood and intravenous fluids into the plaintiff's circulatory system. The plaintiff, during the trial, dismissed the action as to the doctor. The court instructed the jury that the defendant hospital was negligent as a matter of law and submitted only the question of damages. The jury returned a verdict in favor of the plaintiff and against the defendant hospital in the amount of $20,000. The defendant appeals.

The evidence in the case established that the plaintiff was admitted to the hospital on December 20, 1963, with a broken hip. His doctor had him taken to surgery where a catheter was inserted into the vein of his left arm by the anesthesiologist who was assisting at the operation for the purpose of administering anesthesia prior to the operation on Mr. Dickerson's hip. This catheter is described as a polyethylene tube which is from 6 to 10 inches long and about one millimeter in diameter. About one half of the length of the tube is inserted into the vein by the use of a needle that is affixed to the catheter. The needle is then withdrawn from the vein and left on the catheter at the outer end and is used as a means of attaching tubes for the purpose of injecting blood, plasma and other intravenous fluid. The purpose of this device is to remove the necessity of making repeated punctures of the vein in the arm. After the device is installed, it is taped to the arm with adhesive tape.

The hospital records showed that on December 21, 1963, at 12:15 p.m. the administration of 500 cc. of blood was commenced through this catheter by Mary Applin, a registered nurse at the hospital. This intravenous injection was discontinued at 5 p.m. the same day by another nurse, who did not testify at the trial.

At 8:30 the following morning, Nurse Applin returned to the plaintiff's room to commence an intravenous injection

and noticed that the apparatus leaked. She removed the bandage, and her record made at the time reads as follows:

[N]eedle found with bevel under skin at intracath site; unable to locate intracath; Dr. Goldenberg and Dr. Olson notified.

The plaintiff's room, including the bedding, was searched, but the catheter was not located. Dr. Olson had X rays made and, as a result, the radiologist was of the opinion that he saw the catheter. Dr. Olson made incisions in the arm in an effort to find the catheter, but was unsuccessful.

The plaintiff was discharged from the hospital with directions to report any pains. He later experienced pain in his chest, which he reported to the doctor. Dr. Olson arranged to have additional exploratory work done at University Hospital. The catheter was not located, but the study done by University Hospital did not rule out the possibility that the catheter was still in the plaintiff's body.

The trial court was of the opinion that the evidence conclusively established negligence on the part of the hospital resulting in the loss of the catheter. The defendant contends, however, that the question should have been submitted to the jury. The theory of the defendant is that this is a res ipsa loquitur case, and the testimony that the loss of a catheter does not ordinarily occur without negligence served only to take the plaintiff past a nonsuit and did not conclusively establish negligence on the part of the defendant.

The uncontradicted testimony was that the responsibility for immobilizing a catheter in a patient's arm by tape is shared by the floor staff and the dressing-room staff of the hospital. If it becomes loose, the dressing-room staff is notified and makes the adjustment. The maintenance, care, use and safety of an installed catheter is a matter of routine hospital care. The observation of its condition is part of the hospital care on an hour-to-hour basis.

If the catheter is not secured with tape, it can move out or into the vein and through it. When the catheter and

needle are taped in a proper manner, the catheter does not disappear.

There was no testimony from any source that a catheter placed in a patient's body can be lost in the exercise of reasonable care by the hospital and its personnel charged with the care of the patient.

At the time of trial, the catheter still had not been located. There was testimony that, if it were in the body of the plaintiff, it might cause damage, although it would not necessarily do so.

The plaintiff points out that its evidence was uncontradicted, and no other explanation for the disappearance of the catheter was offered. While the defendant argues that there was no proof that the hospital personnel departed from the accepted standard of care, it overlooks the fact that the nurse who discontinued the intravenous injection on December 21 did not testify, and there is no evidence of the condition in which she left the catheter, other than the condition in which it was found the following morning. Since the evidence by the registered nurse was that, if the intracath and needle are properly taped as it is done regularly in the hospital, the intracath will not move, that condition bespoke negligence. The needle was taped to the arm, at the point where the catheter had previously been inserted. The point of the needle was imbedded under the skin at the *very* same entry where the intracath had been. There is not the slightest suggestion in the record that someone other than a nurse adjusted the catheter and its bandage. Whatever happened to it, as far as the record shows, happened because the catheter was not properly taped to the arm.

The defendant cites *Jankelson v. Sisters of Charity of House of Providence,* 17 Wn.2d 631, 136 P.2d 720 (1943), holding that a jury verdict may not be based on speculation and conjecture and saying that the cause of an accident may be said to be speculative when, from a consideration of all the facts, it is as likely that it happened from one cause as another.

200

■■   The evidence of negligene and causation in this case is not of that class. The evidence showed only one way in which the loss could have occurred, since it was not suggested that the catheter was handled by anyone other than hospital personnel. Nor is it, as the defendant suggests, a case of res ipsa loquitur, in that the plaintiff showed only that a loss of a catheter does not ordinarily occur without negligence. The plaintiff's evidence showed more than that. It showed that there was no other plausible explanation for the loss. Consequently, the plaintiff's evidence being uncontradicted, we think the trial court correctly held that reasonable minds could not differ that the catheter was lost as a result of the negligence of the defendant hospital.

■   The defendant also assigns error to the refusal of its requested instruction that it was for the jury to determine whether the catheter is now in the body of the plaintiff. Under the rule laid down in defendant's cited case, *Jankelson v. Sisters of Charity of House of Providence, supra,* such an instruction would have been erroneous. It would have invited speculation on the part of the jury. There was no evidence on which the jury could base a finding that the catheter is in the body of the plaintiff, or a finding that it is not. The only matter before it was the question of the amount of damage suffered by the plaintiff as a result of the loss of the catheter, with the resultant *possibility* that it might be in his body. There was evidence of substantial damage in this respect—the exploratory procedures to which he was subjected, and the anxieties which he has suffered and will likely suffer until he knows for certain that the catheter is *not* in his body. On the record before us, whether it is or is not is a matter for conjecture. The trial court properly refused to submit the question to the jury.

The judgment is affirmed.

ALL CONCUR.